NOT DESIGNATED FOR PUBLICATION

No. 122,744

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRANDON BRYANT INGRAM JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Geary District Court; STEVEN L. HORNBAKER, judge. Opinion filed August 6, 2021.
Affirmed.

*Rick Kittle*, of Kansas Appellate Defender Office, for appellant.

*Bobby J. Hiebert Jr.,* assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., HILL and CLINE, JJ.

PER CURIAM: A jury sitting in Geary County District Court found Brandon Bryant Ingram Jr. guilty of felony theft, identify theft, and unlawful use of a computer when he used personal identification information of En En Chen to loot about $57,000 from a bank account for a restaurant Chen owned and operated. Ingram contends the State presented insufficient evidence to support the convictions for identity theft and unlawful use of a computer. We disagree and affirm the convictions and sentences.

Given the narrow issues on appeal, we offer a streamlined recitation of the facts. For years, Chen ran the China Chef restaurant in Junction City. He maintained a business

1

account for the enterprise at the local branch of a regional bank. For a time, Ingram worked at the restaurant delivering to-go orders to customers. He also worked for a tax service that Chen used. So Ingram knew about Chen's finances and had access to identification information for Chen and his accounts.

Every five or six years, Chen would close the restaurant for an extended period and travel to his native China. Upon returning from his most recent trip in May 2018, Chen discovered that his business account had no money in it. With the assistance of a friend who acted as a translator, Chen spoke with a bank representative. He reviewed a printout of bank documents and identified 95 unauthorized electronic transactions transferring $57,087.98 from the account. Other banking records showed the money had been moved into accounts in the name of Ingram or Brittany Harper. Armed with that information, Chen contacted law enforcement authorities.

In due course, a detective interviewed Ingram and Harper. Intermittent romantic partners, Ingram and Harper had two children together. But they seldom shared a household and were not during this time. Harper disclaimed any knowledge of the bank transfers. Ingram initially told the detective he was unaware of the transactions. But when the detective confronted him with documents showing payments on his sizeable hospital bill, Ingram admitted moving money out of Chen's account. He said he did so to cover various financial obligations he had, including the hospital bill. Ingram told the detective he bore Chen no ill-will and simply needed money from somewhere to pay debts.

At trial in July 2019, Chen testified about his business and the bank account. The other prosecution witnesses included a representative of the bank, the investigating detective, and Harper. The detective recounted his conversations with both Harper and Ingram for the jury. Ingram neither testified in his own defense nor offered other evidence.

2

As we have indicated, the jury convicted Ingram of theft, a severity level 7 nonperson felony violation of K.S.A. 2017 Supp. 21-5801, based on the amount of the loss; identity theft, a severity level 8 nonperson felony violation of K.S.A. 2017 Supp. 21-6107; and unlawful use of a computer, a severity level 8 nonperson felony violation of K.S.A. 2017 Supp. 21-5839. At a later hearing, the district court imposed a controlling sentence of 13 months in prison on Ingram for the felony theft conviction with lesser concurrent terms for the other convictions and placed him on probation for 24 months, consistent with the sentencing guidelines and Ingram's minimal criminal history. The district court found that restitution would be unworkable because of the sizeable amount of the loss and Ingram's ongoing financial obligations, including child support. Ingram has appealed.

On appeal, Ingram does not challenge his conviction or sentence for theft. Rather, he says the State presented insufficient evidence to the jury to support his convictions for identity theft and unlawful use of a computer. In reviewing a sufficiency challenge, we construe the evidence in a light most favorable to the party prevailing in the district court, here the State, and in support of the jury's verdicts. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018); *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). The issue for review is simply whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *Butler*, 307 Kan. at 844-45; *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014).

We turn first to the identity theft conviction. Pertinent here, the identity theft statute criminalizes:

"[O]btaining, possessing, transferring, using, selling or purchasing any personal identifying information, or document containing the same, belonging to or issued to another person, with the intent to:

(1) Defraud that person, or anyone else, in order to receive any benefit; or

(2) misrepresent that person in order to subject that person to economic or bodily harm." K.S.A. 2020 Supp. 21-6107(a).

In turn, "personal identifying information" is broadly defined to include among other things a person's name, account numbers, passwords, and electronic codes or identifiers. K.S.A. 2020 Supp. 21-6107(e)(2).

The State charged Ingram under K.S.A. 2017 Supp. 21-6107(a)(2), so it had to show he harbored an intent to misrepresent Chen and to subject Chen to economic harm. On appeal, Ingram contends the evidence did not establish some desire or intent on his part to harm Chen. Ingram points to his explanation to the detective that he needed the money he drained from Chen's account to pay his own financial obligations. He says that's different from having an intent to subject Chen to economic harm. We disagree.

The criminal code defines "with intent" and "intentionally" as a culpable state of mind evincing a "conscious objective or desire to engage in the conduct or cause the result." K.S.A. 2020 Supp. 21-5202(h). Here, Ingram had a conscious or deliberate design or desire to take money without permission from another person's bank account to pay his own debts. Doing so would necessarily inflict economic harm on that person, since Ingram knew he was depriving that person of the money. In short, the intent to do the former inevitably caused the latter. Although Ingram's primary purpose may have been his own financial gain, that gain subjected Chen to an equivalent financial loss or harm. Those are mutual and interlocking results that Ingram intended precisely because they are entirely predictable and inseparable consequences of his criminal acts. So Ingram's economic gain and Chen's economic harm are two sides of the same stolen coin. Ingram doesn't get a pass because he was more interested in his own gain than in Chen's concomitant loss.

4

Next, Ingram contends the State failed to prove computer theft because the trial evidence did not show that he used a computer to access Chen's bank account or to transfer money out of it. The argument gives far too narrow a reading to the controlling statutory language. In K.S.A. 2020 Supp. 21-5839(a)(2), the Legislature criminalized "us[ing] a computer, computer system, computer network or any other property for the purpose of devising or executing a scheme or artifice with the intent to defraud or to obtain money, property, services or any other thing of value by means of false or fraudulent pretense or representation." Here, the bank representative's testimony and the documentary evidence established that Ingram electronically invaded the bank's computer system using Chen's identification information and took money from his account without permission. How Ingram specifically accessed the bank's system does not matter; his use of the bank's computerized accounts is sufficient to establish the crime.

Ingram does not otherwise dispute the evidence supporting the jury's verdict. The concession makes sense. Ingram plainly executed a scheme to obtain money by false pretenses, since he represented himself to the bank's system as Chen when he deployed Chen's identification information to access the account.

The State presented sufficient evidence to support both the identity theft charge and the unlawful use of a computer charge. We, therefore, affirm those convictions and the resulting sentences.

Affirmed.